**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 24-60863-CIV-AHS**

Zemiao Chen

*Plaintiff*,

v.

The Individuals, Partnerships and
Unincorporated Associations Identified on
Schedule A,

_____*Defendants*._____  /

**PLAINTIFF'S EX PARTE MOTION FOR ENTRY OF**
**TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION,**
**ORDER RESTRAINING TRANSFER OF ASSETS AND EXPEDITED DISCOVRY**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Plaintiff, Zemiao Chen ("Plaintiff"), hereby does apply, on an *ex parte* basis, for entry of

a temporary restraining order and an order restraining transfer of assets, and upon expiration of the

temporary restraining order, a preliminary injunction against Defendants, the Individuals,

Partnerships, and Unincorporated Associations identified on Schedule "A" ("Defendants")

pursuant to 35 U.S.C. § 283, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a). In

support thereof, Plaintiff submits the following memorandum of law.

**I.      INTRODUCTION**

Plaintiff has filed this action to combat e-commerce store operators who trade upon

Plaintiff's Patent by making, using, offering for sale, selling and/or importing into the United

States for subsequent sale or use unauthorized and unlicensed products that infringe Plaintiff's

Patent, U.S. Patent No. D1,019,124S ("the '124 Patent"), namely the Bag ("Infringing Products")

and/or importing the Infringing Products into the United States including this district by operating

e-commerce stores established via third-party Internet marketplace platforms under their seller

identification names and/or a commercial Internet website operating under their domain name identified on Schedule "A" hereto (the "Seller Storefronts"). Specifically, Plaintiff has obtained evidence clearly demonstrating that (a) Defendants are engaged in the advertisement, offering for sale, and sale of the Bag directly or indirectly bearing Plaintiff's Patent; and (b) Defendants accomplish their sales of counterfeit and infringing goods through the use of, at least, e-commerce stores operated via Internet marketplace platforms under the Seller Storefronts. Based on this evidence, Plaintiff's Complaint alleges claims for patent infringement.

Defendants' unlawful activities have deprived and continue to deprive Plaintiff of their respective and exclusive rights to use and control the Plaintiff's Patent. Defendants have targeted sales to Florida residents by setting up and operating e-commercestores using one or more Seller Storefronts through which Florida residents can purchase Infringing Products. The e-commerce stores operating under the Seller Storefronts share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Storefronts to conceal both their identities and the full scope and interworking of their operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented design, as well as to protect unknowing consumers from purchasing Infringing Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue *ex parte* a Temporary Restraining Order. Plaintiff has obtained evidence that Defendants have their payments processed on their behalf using money transfer and retention services with Amazon.com ("Amazon") as a method to receive monies generated through the sale of counterfeit and infringing products.

In light of the inherently deceptive nature of the counterfeiting business, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of

this Court unless they are restrained. Accordingly, to preserve that disgorgement remedy, Plaintiff seeks an *ex parte* order restraining Defendants' assets, including specifically, funds transmitted through the Financial Entities.

## II.   STATEMENT OF FACTS

### A.   Plaintiff's Rights.

Plaintiff is the applicant and assignee of the '124 Patent. Plaintiff's Products are distributed and sold to consumers throughout the United States, including consumer in Florida. Plaintiff is the lawful owner of all right, title, and interest in and to the federally patented Plaintiff's patent.

The registrations for Plaintiff's Patent as to their designs are valid, in full force and effect pursuant to 35 U.S.C. §282. The registrations for Plaintiff's Patent constitute *prima facie* evidence of their validity and of Plaintiff's exclusive rights to use its Patent pursuant to 35 U.S.C. §§261, 282. Plaintiff's Patent has been used exclusively and continuously by Plaintiff and has never been abandoned.

Plaintiff's Bag is known for its distinctive patented designs, which are associated with the quality and innovation the public has come to expect from Plaintiff's products. Plaintiff uses these designs in connection with its Bag products.

### B.   Defendants' Unlawful Activities

Recently, a large number of Bags bearing Plaintiff's Patent were dumped on the market, causing market chaos and caused a serious impact on Plaintiff's genuine and patented products. *See* Zemiao Chen Decl. ¶7. The infringing products sold by the defendants were of poor quality, which expose the customers to potential safety risks, directly leading to consumers who mistakenly purchased the infringing products constantly questioning and criticizing Bag products, which greatly adversely affects Plaintiff's goodwill. *Id.*

Specifically, orders were placed on Amazon.com from each of the Defendant's Seller Storefronts set forth in Schedule A of the Complaint of products from each of those Defendants – all directly or indirectly bearing the designs of the Plaintiff's Patent at issue in this action. *See* Zemiao Chen Decl. ¶ 10. None of the Defendants have ever been authorized to manufacture, sell, or offer for sale its products bearing the Plaintiff's Patent. *Id.*

Defendants are making substantial sums of money by preying upon members of the general public. Moreover, Defendants' Bag products bearing Plaintiff's Patent infringed Plaintiff's exclusive right to its Patent. Ultimately, Defendants' Internet activities amount to nothing more than illegal operations, infringing on Plaintiff's intellectual property rights. The Storefronts and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff.

## III.     ARGUMENT

### A.     A Temporary Restraining Order is Essential to Prevent Immediate Injury.

Rule 65(b) of the Federal Rules of Civil Procedure provides, in part, that a temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "specific facts in an affidavit … clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." FED. R. CIV. P. 65(b). This is such a case. The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiff's Patent and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases. Defendants can easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for Temporary Restraining Order and thereby thwart the Court's ability to grant meaningful relief and can

completely erase the status quo. *See* Palmer Decl., ¶ 3. Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where Defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants.")

Absent a temporary restraining order without notice, Defendants can and, based upon Plaintiff's counsel's past experience, will significantly alter the status quo before the Court can determine the parties' respective rights. In particular, the Internet based e-commerce stores and website at issue are under Defendants' complete control. Thus, Defendants have the ability to change the ownership or modify domain registration and e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names or domain names, and transfer assets and ownership of the Seller Storefronts. *See* Palmer Decl. ¶ 3. Such modifications can happen in a short span of time after Defendants are provided with notice of this action. *Id.* Defendants can also easily electronically transfer and secret the funds sought to be restrained if they obtain advance notice of Plaintiff's Application for TemporaryRestraining Order and thereby thwart the Court's ability to grant meaningful relief and can completely erase the status quo. *Id.* As Defendants engage in illegal counterfeiting and infringingactivities, Plaintiff has no reason to believe Defendants will make their assets available for recovery pursuant to an accounting of profits or will adhere to the authority of this Court any morethan they have adhered to federal patent law. *Id.*

Moreover, federal courts have long recognized that civil actions against counterfeiters – whose very businesses are built around the deliberate misappropriation of rights and property belonging to others – present special challenges that justify proceeding on an *ex parte* basis.

*Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"); *see also Louis Vuitton Malletier v. beltteen*, Case No. 18-cv-62871-JIC (S.D. Fla. Nov. 28, 2018) (Order granting *Ex Parte* Application for Temporary Restraining Order and restraining defendants' assets and defendants' related assets). This Court should prevent an injustice from occurring by issuing an *ex parte* temporary restraining order which precludes Defendants from continuing to display their infringing content via the e-commerce stores and website or modifying or deleting any related content or data. Only such an order will prevent ongoing irreparable harm and maintain the status quo.

**B.      Standard for Temporary Restraining Order and Preliminary Injunction.**

In this Circuit, the standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. *See Emerging Vision, Inc. v. Glachman*, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (*citing Siegel v. LePore*, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) *aff'd* 234 F.3d 1163 (11th Cir. 2000)). In order to obtain a temporary restraining order or a preliminary injunction, a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Schiavo ex rel. Schindler v. Schiavo,* 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets).  Plaintiff's evidence establishes all of the relevant factors.

**1.      Probability of Success on the Merits of Plaintiff's Claims.**

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a).  In this case, Plaintiff is the lawful assignee of all right, title and interest in and to the '124 Patent. *See* Zemiao Chen Decl. ¶3.  Plaintiff has submitted sufficient documentation that Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the designs claimed in Plaintiff's Patent.  The documentation submitted by Plaintiff shows that an ordinary observer would be deceived into thinking that the Infringing Product was the same as the Plaintiff's patented designs. *Competitive Edge, Inc. v. Staples, Inc.*, 763 F. Supp. 2d 997, 1011 (N.D. Ill. 2010) (*citing EgyptianGoddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008)).  Finally, Plaintiff has not licensed or authorized Defendants to use Plaintiff's Patent, and none of the Defendants are authorized retailers of genuine Plaintiff's Bag products. *See* Zemiao Chen Decl. ¶10.  Accordingly, Plaintiff is likely to establish a *prima facie* case of patent infringement.

## 2.     Plaintiff is Suffering Irreparable Injury.

Irreparable harm resulting from patent infringement is demonstrated when "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011).  At this stage, Plaintiff only needs to show that irreparable harm is likely. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winterv. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Here, Plaintiff is likely to suffer two primary forms of irreparable harm: (1) loss of customers' goodwill and (2) reputational harm. *See* Zemiao Chen Decl. at ¶¶ 19-23.  Each of these harms, independently, constitutes irreparable harmand offers a

basis on which preliminary relief should issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quote and citesomitted).

Defendants' infringement erodes and devalues Plaintiff's rights in the designs of Plaintiff's Patent, thereby risking injury to Plaintiff's goodwill and reputation and interfering with Plaintiff's ability to exploit t Plaintiff's Patent. *See* Zemiao Chen Decl. at ¶¶ 19-23. *See, e.g., Otter Prods. v. Anke Group Indus. Ltd.,* 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (explaining that absent the requested TRO, plaintiff were likely to suffer "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design Patent."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016)("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale,and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injuryto NIKE in the form of loss of control over its valuable intellectual property rights, loss  ofconsumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patent.").

Defendants' infringement of Plaintiff's Patent by sale of the Infringing Products is likely to cause consumer confusion with genuine Plaintiff's Bag products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill.  *See* Zemiao Chen Decl. at ¶¶ 19-23.  As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v.*

*J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.,* 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of Plaintiff's Patent in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Finally, because Defendants are businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgement is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where thelikely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where"'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). Furthermore, other district courts have found that money damages were insufficient in similar cases involving foreign infringers. *E.g., Aevoe Corp. v. AE Tech Co.,Ltd.*, No. 2:12-cv-0053, 2012 WL 760692, at *5 (D. Nev. Mar. 7, 2012) ("[A] finding of irreparableharm was not clearly erroneous because it also found that since AE Tech is a foreign corporation,money damages

would be insufficient."); *Otter Prods.*, 2013 WL 5910882, at *2 ("because Ankehas no presence in the United States, it may be difficult or impossible for Otterbox to enforce a monetary judgement against Anke"); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D.Kan. 2009) (granting preliminary injunction; "the prospect of collecting money damages from a foreign defendant with few to no assets in the United States tips in favor of a finding of irreparableharm"); *Nike*, 166 F.Supp.3d, at 1179 ("[B]ecause Bestwinn has no presence in the United States,it may be difficult or impossible for NIKE to recover a money judgement against Bestwinn").

For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Ruleof Civil Procedure 65(b)(1).  *See* Zemiao Chen Decl. at ¶24.

### 3.  The Balance of Hardship Tips Sharply in Plaintiff's Favor, and the Relief Sought Serves the Public Interest.

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.,* 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. This is because any harm to Defendants that could possibly result from a temporary restraining order is self-inflicted.  Defendants took a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.,* 664 F.3d922, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license or permission to Defendants with respect to Plaintiff's Patent.  In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### C.    The Equitable Relief Sought is Appropriate.

The Patent Act authorizes courts to issue injunctive relief "in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable."  35 U.S.C. § 283.

### 1.    A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of the Plaintiff's Patent Is Appropriate Interest.

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease making, using, offering for sale, selling, and importing any products not authorized by Plaintiff and that include any reproduction, copy, or colorable imitation of the designs claimed in Plaintiff's Patent.  Such relief is necessary to stop the ongoing harm to Plaintiff's control over its rights in its Patent, its reputation, and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of Plaintiff's Patent. The need for *ex parte* relief is magnified in today's global economy where infringers can operate anonymously over the Internet.  Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Infringing Products. Many courts have authorized immediate injunctive relief in similar cases involving the

sale of infringing products. *See, e.g., Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016)

### 2. Entry of an Order Prohibiting Transfer or Modification of Seller Storefronts During the Pendency of this Action is Appropriate.

To preserve the status quo, Plaintiff seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller Storefronts being used and controlled by Defendants to other parties. Once they become aware of litigation against them, Defendants operating online can easily, and often will, change theownership or modify domain name registration and e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names and domain names, and transfer assets and ownership of the Seller Storefronts, and thereby thwart the Court's ability to grant meaningful relief. *See* Palmer Decl. ¶ 3. Here, an interim order prohibiting Defendants from transferring their e-commerce stores and domain name operating under the Seller Storefronts poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief. Courts have granted this precise relief in this district and similar relief in actions where the relied upon instrumentalities of infringement and contact are e-commerce storesand websites.

### 2. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate.

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not grantedin this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts

before a restraint is ordered.  Specifically, upon information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc*., 256 F. App'x 707, 709 (5th Cir. 2007).  In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

This Court has broad authority to grant such an order. The Supreme Court has provided that district courts have the power to grant preliminary injunctions to prevent a defendant from transferring assets in cases where an equitable interest is claimed. *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 144 L. Ed. 2d 319, 119 S. Ct. 1961 (1999). Moreover, almost every Circuit has interpreted Rule 65 of the Federal Rules of Civil Procedure to grant authority to courts to restrain assets *pendente lite. See Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 223077 (S.D.N.Y. May 7, 1997) (acknowledging that "[a]lmost all the Circuit Courts have held that Rule 65 is available to freeze assets *pendente lite* under some set of circumstances").

In light of the illicit nature of the counterfeiting business and the ability of counterfeiters to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of

such asset restraints in cases involving counterfeiting defendants. *See, e.g. Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d 982 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992). Indeed, courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *See S. E. C. v. Lauer,* 445 F. Supp.2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); *Levi Strauss & Co. v. Sunrise Int'l Trading*, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); *Kemp v. Peterson,* 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assetsnot specifically traced to illegal activity).

Similarly, in *Reebok v. Marnatech,* the District Court granted Reebok a limited restraint of the defendants' assets for the purpose of preserving those assets, thus ensuring the availability of a meaningful accounting after trial. *Reebok Int'l Ltd.*, 737 F. Supp. at 1526. In affirming the decision, the Ninth Circuit determined that the plaintiff met its burden of demonstrating: (1) a likelihood of success on the merits; (2) immediate and irreparable harm as a result of defendants' counterfeiting activities; and (3) that defendants might hide their allegedly ill-gotten profits if their assets were not frozen. *Reebok Int'l Ltd.*, 970 F.2d 552, 563 (9th Cir. 1992). Moreover, the Court reasoned: "because the Lanham Act authorizes the District Court to grant Reebok an accounting of [defendant's] profits as a form of final equitable relief, the District Court has the inherent power to freeze [defendant's] assets in order to ensure the availability of that final relief." *Reebok Int'l Ltd.*, 970 F.2d. at 559; *see also Republic of Philippines v. Marcos*, 862 F.2d 1355, 1364 (9th Cir. 1988), cert. denied, 490 U.S. 1035 (1989) ("[a] court has the power to issue a preliminary

injunction in order to prevent a defendant from dissipating assets in order to preserve the possibility of equitable remedies").

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued *ex parte*. *See F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.*, 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal patent laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Plaintiff's knowledge.

### D.   Plaintiff Is Entitled to Expedited Discovery.

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, at *6 (N.D. Ill. Dec. 21, 2007). (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S.Ct. 2380 (1978)). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants.  *See* Fed. R. Civ. P. 26(b)(2).

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their sales operations.  The expedited discovery requested in Plaintiff's

Proposed Temporary Restraining Order is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiff's seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## IV.    A BOND SHOULD SECURE THE INJUNCTION.

Because of the strong and unequivocal nature of Plaintiff's evidence of patent infringement, Plaintiff respectfully requests this Court require them to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## V.    CONCLUSION

Defendants' operations are irreparably harming Plaintiff's business, and consumers. Without entry of the requested relief, Defendants' infringement of Plaintiff's Patent in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the temporary restraining order. Additionally, in the event the application is granted, Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically at the hearing on Plaintiff's Motion for a Preliminary Injunction, in accordance with Administrative Order 2020-76. Furthermore, due to the time

provisions of a temporary restraining order, in the event the application is granted, Plaintiff respectfully requests the Court provide a copy of the temporary restraining order to Plaintiff's counsel via e-mail at ajpalmer@palmerlawgroup.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

Date: May 24, 2024             /s/ Andrew J. Palmer

Andrew J. Palmer
Palmer Law Group
5353 N. Federal Highway, Suite 402
Fort Lauderdale, FL 33065
954-491-1997 (facsimile)
ajpalmer@palmerlawgroup.com
***Attorney for Defendant***